# Goulding Fertilizer Co., *et al. v.* Blanchard.

*Bill to Reform a Deed and Mortgage, and to Enjoin a Sale of Land.*

(Decided June 29, 1912. 59 South. 485.)

1. *Reformation of Instrument; Persons Entitled.*—A purchaser at a mortgage sale is in such privity with the mortgagor as to entitle him to the reformation of a misdescription, in the mortgage, even though, as the result of a defective execution of his deed, he acquired only an equitable title; for, if no deed had been executed, and no memorandum of the sale made, only the purchaser or the mortgagee could avail of the omission to defeat the sale.

2. *Same.*—A purchaser at a mortgage foreclosure sale, purchasing in reliance on the description given in the mortgage, advertisement, and actioneer's deed, without reference to some specified piece of land, otherwise properly described, cannot maintain a suit to correct a misdescription in the mortgage, and in his deed, his remedy being for breach of warranty against his immediate or remote grantor; hence, a purchaser seeking reformation must allege that he participated in the mistake in the description.

[Goulding Fertilizer Co., et al. v. Blanchard.]

3. *Same; Grounds; Mistake.*—A party seeking reformation must show that the real agreement was something different, and that, by reason of fraud or mistake, the written instrument fails to correctly express that to which the parties mutually agreed.

4. *Same; Pleading; Demurrer.*—Where the action was by a purchaser at a mortgage foreclosure sale, to reform the description contained in the mortgage, a ground of demurrer that the complainant purchased at foreclosure sale the property described in the foreclosure deeds, properly raises the question of the failure of the bill to allege that the purchaser participated in the mistake.

5. *Mortgages; Foreclosure by Bill; Purchaser.*—A purchaser at a foreclosure sale under judicial decree assumes the risk of the regularity and validity of the proceedings, and, even if the sale is in all respects valid, acquires no greater right or better title than was in the person whose property was sold.

6. *Same.*—A purchaser at a judicial sale on foreclosure of a mortgage may not have an alleged error in his deed corrected, if the correction would work a variance from the judgment or proceedings, and cannot, after the lapse of the term at which the judgment was rendered, have the decree itself corrected, unless the record shows the alleged mistake.

7. *Same; Caveat Emptor.*—As applied to quasi judicial sales by a trustee or mortgagee under power, the rule of caveat emptor only means that the trustee or mortgagee, as agent for the mortgagor, is not responsible for any failure of title, whether due to irregularities in the sale or want of title in the mortgagor, and that the purchaser cannot urge such failure to defeat the liability for the purchase price; it does not preclude the purchaser from recovering from the mortgagor for breach of warranty if there be no break in the chain of personal privity.

8. *Statutes; Pending Action; Operation.*—The Acts 1911, p. 199, are not remedial, but definitive of substantive rights, and do not apply to suits pending at the time of its enactment.    (Sec. 95, Constitution 1901.)

(Dowdell, C. J., dissents in part.)

APPEAL from Covington Chancery Court.

Heard before Hon. L. D. GARDNER.

Bill by W. R. Blanchard against Goulding Fertilizer Company and others to reform a deed and mortgage and to enjoin the sale of a certain quarter section of land. From a decree overruling demurrers to the bill, respondents appeal.    Reversed and remanded on rehearing.

The bill alleges that J. A. Prestwood and wife were indebted to O'Neal, Law & Co. in the sum of $8,625,

and, in order to secure it, executed a mortgage on the 26th day of September, 1907, one secured thereby maturing October 1, 1908, and the other maturing October 1, 1909; that, among other lands described in said mortgage, there was conveyed the S. E. ¼ of section 36, township 4, range 16, and that it was not intended to embrace that quarter section in the mortgage, but it was intended to convey that same quarter section in section 36, township 4, range 14; and that the said Prestwood did not at that time own the quarter section conveyed, but did own and intended to convey the quarter section last mentioned. The failure of the Prestwoods to pay said mortgage is then alleged, and the fact of its advertisement and sale and the making of the deed by the auctioneer and by the individuals composing the firm of O'Neal, Law & Co., alleging that in that deed the land conveyed was the land described in the mortgage; a similar mistake occurring in the deed as in the mortgage. It is further alleged that on March 6, 1908, the Prestwoods executed a mortgage to the Goulding Fertilizer Company, including among other lands the S. E. ¼ of section 36, township 4, range 14, and that the Goulding Fertilizer Company advertised the lands for sale under the power contained in the mortgage. It is also alleged that they had notice of the fact that, before the execution of the mortgage to them, Prestwood intended, and had conveyed, this particular quarter section of land to O'Neal, Law & Co. It is then alleged that Blanchard became the purchaser at the mortgage sale under the mortgage given to O'Neal, Law & Co. The demurrers raised the questions discussed in the opinion.

STEINER, CRUM & WEIL, for appellant. The rule of caveat emptor applies to foreclosure sales under mort-

gage.—27 Cyc. 1488; *Haley v. Bagley*, 37 Mo. 363; *Jackson v. Lucas*, 157 Ala. 51. The principles contended for in this appeal are supported also by the following cases.—*Reddick v. Long*, 124 Ala. 260; *Henderson v. Hosfeldt*, 124 Ala. 391; *Steverson v. Harris*, 131 Ala. 470; *Stewart v. Wilson*, 141 Ala. 405; *Miller v. Cobb*, 47 Ind. 220; *Armstrong v. Short*, 95 Ind. 326. Unless the power of sale granted is strictly followed the deed is not good.—*Sanders v. Cassidy*, 86 Ala. 246. Hence, the deed was not sufficient to establish the requisite privity.—2 Perry on Trusts, 179.

W. L. PARKS, for appellee. A conveyance to the partnership vested the legal title in the several partners as tenants in common.—*Brunson v. Morgan*, 76 Ala. 593. There being no conveyance by the auctioneer, the purchaser acquires an equity sufficient to compel a conveyance.—*Sanders v. Cassidy*, 86 Ala. 246; 3 R. I. 51; 2 Jones on Mortgages, sec. 1894. The mortgagee or persons holding the legal title could have filed a bill to reform, and certainly the assignee of the legal title by deed would have the same right.—*Smith v. Tillis*, 108 Ala. 267. In any event, Acts 1911, p. 199, confers on persons claiming title directly or remotely from the grantee, authority to maintan a bill for reformation in all cases in which the grantee, mortgagee or other conveyancers would be entitled to as a rule, and this statute is remedial, and has retroactive effect.—*Ex parte Buckley*, 53 Ala. 54; *Eskridge v. Dittmars*, 51 Ala. 250; *Carey v. Simmons*, 87 Ala. 527.

DOWDELL, C. J.—This is a bill by a purchaser at a foreclosure sale under power contained in the mortgage to correct a mistake in the description of land in the mortgage and in the deed under the foreclosure

sale. The mistake is alleged to have been made by the draughtsman of the mortgage, and consisted in stating the wrong number of the range in which the land was situated. The bill was demurred to on the theory that the purchaser was a stranger and there was no privity in contract as to him, and that the doctrine of caveat emptor applied, and hence that he had no right to file a bill to correct the mistake and to reform the mortgage and deed.

The mortgage contained an express power to the auctioneer to convey under the foreclosure, in the names of the mortgagors. The auctioneer, however, made an ineffectual effort to execute the power by conveying in the names of O'Neal, Law & Co., the mortgagees in the mortgage. But this was not all that was done. The individuals composing the partnership and in whom the legal title to the land resided joined in this conveyance with the auctioneer to the complainant, Blanchard. Moreover, at a subsequent day, the auctioneer did convey to the purchaser in the names of the mortgagors. This we think created Blanchard a privy in contract to all intents and purposes in equity, as much so as if the mortgagees had assigned the mortgage to Blanchard in a manner conveying the legal title. Under the deed he was not only the grantee of the auctioneer who conveyed in the name of the partnership, and hence only the equity, but was the grantee of the legal title by the mortgagees in their individual capacities. He (Blanchard) therefore occupied as favorable position in equity as a privy in contract as a subvendee would. The principle stated in *Greer, et al. v. Watson*, 170 Ala. 334, 54 South. 487, is conclusive of this case.

The chancellor properly overruled the demurrer, and his decree will be affirmed.

Affirmed. All the Justices concur.

[Goulding Fertilizer Co., et al. v. Blanchard.]

ON REHEARING.

SOMERVILLE, J.—On the original hearing I concurred in the foregoing opinion of the CHIEF JUSTICE, and in the affirmance of the chancellor's decree overruling the demurrer to the bill of complaint.

On appellant's application a rehearing was granted, the affirmance set aside, and a judgment of reversal entered, in which ANDERSON, MCCLELLAN, SAYRE, and SOMERVILLE, JJ., concurred, but no opinion was then filed expressive of the views of the majority.

I now undertake to explain the reasons for my action on the first application for rehearing, and to state the principles which I think properly directed that result.

1. I adhere to the conclusion reached on the original hearing that the purchaser at the mortgage sale under the power was in such privity with the mortgagor as to entitle him to the reformation of a misdescription in the mortgage, equally with the mortgagee. I regard it as immaterial that, by reason of a defective execution of the deed of sale, the purchaser acquired only an equitable title thereby; nor do I think the fact that the mortgagees individually joined in the execution of the foreclosure deed was essential to the purchaser's equity of reformation. Had no deed been executed to the purchaser at all, nor any memorandum made, its omission could be availed of to defeat the sale only by the mortgagee or the purchaser.—*Cooper v. Hornsby,* 71 Ala. 62; *Mcwburn's Heirs v. Bass,* 82 Ala. 622, 2 South. 520.

I can find no support either in reason or authority for the proposition that the purchaser at a mortgage foreclosure sale under the power is not as much entitled to reform a perpetuated mistake in the deeds

constituting his chain of title, as any other subvendee.

In *Williams v. Hatch*, 38 Ala. 338, where a bill was filed by a mortgagee to correct the description in his mortgage after a foreclosure sale under the power, although relief was denied, it seems to be clearly implied that *as purchaser* he could have maintained the bill; for it was said: The only title which the complainant alleges is a title as mortgagee, and the only relief he seeks is in his character as mortgagee; but the proof shows that he has parted with his title as mortgagee, and that, if he has any right to relief at all, it is in the distinct character of purchaser of the mortgage title. This variance between the allegations and the proof is fatal to the complainant's case in its present form."

In several later cases purchasers at such foreclosure sales seem to have filed such bills, and relief has been granted without any point being made as to the effect of foreclosure on the right asserted.

In the recent case of *Greer v. Watson*, 170 Ala. 334, 54 South. 487, the precise point was decided, viz., that "a purchaser at a mortgage foreclosure sale under power in the mortgage may sue to correct a mistake in the description in the mortgage." The bill there was substantially like the present bill, and the point in question was fairly raised by a general demurrer to the bill for want of equity. It is true that the purchaser had not paid the purchase money, although he had received his deed; but that fact, if material at all, could only have weakened the complainant's equity.

I see no reason for disturbing that decision now, even if its correctness were originally debatable. Nor can I appreciate the merit of the argument that the rule of caveat emptor, however vigorously it might be applied to foreclosure sales under judicial decree, has

anything to do with the question. That rule varies in force and effect, and is applied in its fullest extent to judicial sales only. The purchaser assumes the risk of the regularity and validity of the proceedings upon which the sale is founded; and, even if the sale is in all respects valid, the purchaser succeeded to no greater right and no better title than had the person whose property is thus sold. "The purchaser succeeds to his rights and attitude in respect of the property sold, takes his shoes, stands in his place, acquires his interest as the same existed in his hands, subject to all infirmities of title then attaching to the estate, and to all equities, known or secret, which operated a limitation upon the nominal or apparent estate  *   *   * and if by reason of the existence of such rights, whether known or not, or discoverable or not, he takes nothing by his purchase, he cannot complain." Per McClellan, J., in *Lindsay v. Cooper,* 94 Ala. 170, 11 South. 325, 16 L. R. A. 813, 33 Am. St. Rep. 105. In short, the purchaser stands as if he were a mere quitclaimee of the owner. And having once bound himself to buy, he cannot, in the absence of fraud in the immediate transaction, refuse for any reason to execute the purchase, nor rescind it when executed.

Sales by a trustee or mortgagee under power granted are sometimes characterized as quasi judicial. This, we apprehend, only in the same sense that they operate to cut off the right of redemption as effectually as would a sale under judicial decree. So it is generally declared that the rule of caveat emptor applies to such sales, but certainly not in the same sense or degree as to judicial sales proper. Our reports teem with cases in which purchasers at power sales have been treated as bona fide purchasers for value, and protected against secret claims and equities, whether existing in favor

of third persons against the mortgagor, or in favor of
the mortgagor against the mortgagee.—*Hoots v. Williams,* 116 Ala. 372, 22 South. 497; *Kindred v. N. E.
Mortg. Security Co.,* 116 Ala. 192, 23 South. 56; *Sheridan v. Schimpf,* 120 Ala. 475, 24 South. 940; *Cahalan
v. Monroe,* 56 Ala. 303. The rule of caveat emptor in
such cases means no more than that the mortgagee or
trustee who makes the sale, as agent for the mortgagor, is not responsible for any failure of title whether
due to irregularities in the sale or want of title in the
mortgagor, and that the purchaser cannot urge such
failure to defeat his absolute liability to pay the purchase price. If, however, the mortgagor warranted the
title to the mortgagee, the purchaser may recover of the
mortgagor for breach of that warranty. Clearly there
is no break in the chain of personal privity merely because the sale is effected by an agent under a power
of attorney, instead of by the owner in person. It is
not apparent why such a purchaser cannot go behind
the face of his deed and avail himself of the equity,
conceded to subvendees in general, to have a proven
mistake corrected. To deny him relief would certainly
be to sanction the destruction of a highly regarded
equity on grounds that can scarcely be regarded as
more than formal and technical.

It is, indeed, well settled in this state that a purchaser at a judicial sale—that is, a sale founded on
and pursuant to a judgment or decree—cannot have
corrected an alleged error in his deed, if the correction
would work a variance from the judgment or proceedings from which alone the deed draws its life; and, of
course, he cannot, after the lapse of the term at which
the judgment is rendered, have altered the decree itself
where the record does not furnish the evidence of the
alleged mistake.—*Reddick v. Long,* 124 Ala. 260, 27

South. 402; *Henderson v. Hosfeldt,* 124 Ala. 391, 27 South. 415; *Stephenson v. Harris,* 131 Ala. 470, 31 South. 445; *Stewart v. Wilson,* 141 Ala. 405, 37 South. 550, 109 Am. St. Rep. 33.

These cases clearly explain why a purchaser cannot go behind a judicial decree to correct a misdescription in, or omission from his official deed; and in none of them is there any allusion to the rule of caveat emptor. Indeed, in *Stephenson v. Harris, supra,* it is expressly recognized that sales not made pursuant to a judicial decree are in a separate class and not within the rule of the decision.—131 Ala. 477, 31 South. 445.

I am aware of no case in any jurisdiction in which such relief has been denied because of a mere foreclosure under power of attorney.

2. The bill of complaint, the demurrer to which was overruled by the chancellor, does not show that complainant, as purchaser at the foreclosure sale, intended to buy other than the lands actually described in the mortgage, advertisement, and auctioneer's deed to himself; in other words, it fails to allege any mistake in which complainant participated, and hence fails to show any privity on his part with respect to the error of description that occurred as between the mortgagor and the mortgagee.

As I understand the law, a party who seeks to reform a written instrument must clearly show that the real agreement was something different, and that by reason of fraud or mistake the written memorial of that agreement has failed to correctly express that to which the parties mutually agreed.—*Berry & Co. v. Sowell,* 72 Ala. 14. The very essence of his equity is that the instrument misrepresents *his* agreement. As stated by Mr. Pomeroy: "Where the *same mutual mistake has been repeated in each one* of a chain of conveyances,

under such circumstances as to entitle any one of the vendees to a reformation as against his immediate vendor, the equity will work back through all, and entitle the last vendee to a reformation against the original vendor."—6 Pom. Eq. Jur. § 678.

The principle is well stated in *Blackburn v. Randolph,* 33 Ark. 119, 125: "What is meant, when the cases say that the mistake will only be corrected between the original parties and those claiming under them in privity, is, in effect, that the court will not interfere in favor of subsequent purchasers, who were simply ignorant of the former mistake, and may be presumed to have intended to take *by the description used;* nor against subsequent purchasers by the true description for valuable consideration, *without notice of the former mistake.*" (Italics ours.) This case has been twice cited with approval by this court.—*Tillis v. Smith,* 108 Ala. 267, 19 South. 374; *Jackson v. Lucas,* 157 Ala. 54, 47 South. 224, 131 Am. St. Rep. 17.

In *McGehee v. Lehman, Durr & Co.,* 65 Ala. 316, 318, where a mistake in the mortgage was carried into the sale and deed under the power granted, Brickell, C. J., in stating the foundation of the purchaser's right to a reformation, said: "The mistake was of the numbers, subdivisions of sections, and of range and township, in which the lands were situate. The parties (meaning mortgagor and mortgagee) knew the lands intended to be conveyed—there was no mistake as to them. But the mortgagor was mistaken as to their description according to the governmental surveys. Nor was there any error, mistake, or omission, other than this, as to the lands sold under the mortgage. The parties (meaning mortgagee and purchaser) knew the lands which were being sold, and that they were the

[Goulding Fertilizer Co., et al. v. Blanchard.]

lands actually intended to be conveyed by the mortgage."

If a subvendee buy without knowledge of an error of description in a previous deed—if, in short, he buy merely by the description in his own deed, without reference to some specific piece of land properly otherwise described—it is not easy to see how he can complain of a mistake, for as to him there is no ·mistake. He gets a deed to what he buys, and his remedy for failure of title is upon the warranties of his grantors, immediate or remote, if any there be.

The eighth ground of the demurrer is: "It appears from the allegations of the bill that the complainant purchased at foreclosure sale the property as described in the foreclosure deeds subsequently made to him." This assignment aptly attacks the bill for the defect of averment above pointed out and discussed, and should have been sustained. On the original hearing this feature of the case was overlooked, and on the first application for rehearing the considerations above set forth led to my concurrence in the granting of that rehearing, and now lead to my concurrence in the denial of the present application.

3. The act approved April 5, 1911 (Sess. Acts 1911, p. 199), relating to the reformation of mistakes of description in deeds, is cited by appellee as material to the rights of the parties to this cause. But a construction of that act is now unnecessary, since at the time of its passage this suit was already pending. The act is not remedial, but is, on the contrary, definitive of substantive rights, and cannot be applied to pending suits without violating section 95 of the Constitution, which declares that, "after suit has been commenced on any cause of action, the Legislature shall have no power

to take away such cause of action, or destroy any existing defense to such suit."

All the Justices concur in this opinion and in the conclusions stated, except DOWDELL, C. J., who dissents from the conclusion that the bill is defective in not showing that complainant intended to buy other land than that actually described in his deed.

It results that the appellee's application for a rehearing must be denied.

Application overruled