# Woodlawn Realty & Development Co. *v.* Hawkins, *et al.*

## Bill to Reform Deed.

(Decided April 22, 1914.   65 South. 183.)

1. *Reformation of Instrument; Pleading; Right to.*—The effect of the provisions of Acts 1911, p. 199, is to change the original rule requiring the mistake to occur in the entire series of conveyances in order to entitle the last grantee to have his deed corrected; hence, a bill alleging that the deed to complainant's grantor misdescribed the land, and that it was his purpose and that of each subsequent grantor to convey the land intended to be conveyed in the original deed containing the erroneous description, is sufficient.

2. *Same; Laches.*—Laches is not imputable against the right of the parties to have a deed reformed, when in possession of the land under a deed which fails to properly describe the premises, until an opposing claim is set up.

3. *Same; Bill; Sufficiency.*—Where it is alleged that complainant did not discover the misdescription until the assertion of the respondent's claim, and that complainant had exercised general acts of ownership over the property, including the payment of taxes thereon, a bill for reformation of a deed which misdescribed the property, the deed having been made nearly thirty years before, is not subject to demurrer for laches, it appearing that the delay in the filing of the bill did not cause a change in defendant's position.

4. *Equity; Procedure; Laches.*—No arbitrary rule exists for determining when a demand becomes stale, and mere delay does not constitute laches in the absence of a substantial change of condition or prejudice to third party.

5. *Same; Demurrer.*—A demurrer will lie for laches as well as for statutory limitations.

6. *Same.*—In applying the doctrine of laches equity courts act in accord with the analogy furnished by the statute of limitations.

7. *Same; Pleading; Proof.*—Where a bill is filed within the analogous time of the statute of limitations, the burden is on the respondent to show laches, but when brought after the statutory time, the complainant must set up and prove the fact that laches did not exist.

8. *Constitutional Law; Vested Right; Procedure.*—Notwithstanding the provisions of section 95, Constitution 1901, Acts 1911, p. 199, applies to all bills filed or suits begun after its enactment, since the rule changed by such statute was one governing the remedy merely, and not affecting the right.

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

[Woodlawn Realty & Development Co. v. Hawkins, et al.]

Bill by the Woodlawn Realty & Development Company against J. David Hawkins and others, to reform a certain deed as to description. Decree sustaining demurrer to the bill and complainant appeals. Reversed, rendered and remanded.

FRANK S. WHITE & SONS and CARMICHAEL & WINN, for appellant. The appellant is not barred by laches nor staleness of demand.—18 A. & E. Enc. of Law, 124; *Clements v. Cox*, in MSS. Under the well known rules of construction, the deed from Hawkins to Brown really conveys the land as described in the second paragraph of the bill of complaint.—5 Cyc. 867; *Cramton v. Prince*, 83 Ala. 246; *Taylor v. Tomby*, 116 Ala. 621; 6 Mayf. 914. The effect of Acts 1911, p. 199, is to change the old rule in this regard, and as this effects the remedy only and not the right, it is not objectionable from a constitutional standpoint.

JOHN C. FORNEY, for appellee. The bill was objectionable as pointed out by demurrer.—*Golden F. Co. v. Blachard*, 59 South. 488. The Acts of 1911, p. 199, is not remedial, and can have no effect upon this case.— *Steele v. Steele*, 64 Ala. 452. The act was passed to overcome the effect of the decision of the court as illustrated by *Tills v. Smith*, 108 Ala. 267; *Jackson v. Lucas*, 157 Ala. 54, and many other cases of like tenor. No sufficient excuse is shown for the delay.—*Fowler v. Ala. I. & S. Co.*, 164 Ala. 414.

GARDNER, J.—Appellant filed its original bill against the respondents, seeking a correction of description of the property in a certain deed executed by Samuel L. Hawkins to one L. S. Brown on August 10, 1885. Upon demurrer to the original bill being sustained, the

bill was amended; its chief purpose, as before being the reformation of said deed. The chancellor sustained the demurrer to the bill as amended, and from this decree the appeal is prosecuted.

All of the respondents save one (Burr Nabers) are devisees under the will of the said Samuel L. Hawkins, the bill alleging that any interest said respondents may have in the said property is by virtue of said will.

It is further averred that the said respondent S. W. Hawkins, one of said devisees, in the year 1912 executed a conveyance to the respondent Burr Nabers, conveying his interest in said land by a proper description thereof, as is set forth in the second paragraph of the original bill, and that on September 24, 1912, said Nabers brought an action of ejectment against complainant for the recovery of said property, which action is still pending.

It is further averred that the said Nabers bought his interest in said land and took said deed thereto with full notice of complainant's claim and equities in and to the same. As incidental to the relief of reformation sought, complainant seeks an injunction against the further prosecution of the ejectment suit. The bill as amended also alleges possession on the part of the complainant, and seeks to quiet the title to the property.

A correct description of the property is alleged to be in the second paragraph of the original bill, and the description, together with the mistake, is shown with more detail by paragraph 4-A of the amended bill, a plat of the property being attached to the amended bill, and marked Exhibit 5.

The bill shows that the mistake in the description was mutual as between said Hawkins and said Brown, and that it occurred in the drafting of the deed as a mistake either by the scrivener or by the surveyor who

furnished the description, but that the land described in paragraph 2 of the bill was, in truth and in fact, that which was purchased by said Brown from said Hawkins, and was that which was sought to be described in the deed.

By numerous and successive conveyances, it is alleged, complainant has become the owner of said property, and all of said successive conveyances have copied the mistake made in said deed from Hawkins to Brown; and it is averred that the complainant is invested with all the rights, legal and equitable, which were created in the said S. L. Brown by reason of said transaction and deed.

In paragraph 4-B of the amended bill is the following averment: "Orator further shows that the said parcel of land described in paragraph 2 of the bill was the identical parcel of land intended to be conveyed to orator by the deed from which orator derived title to the same, and that it was mutually intended by the respective grantors and grantees that in each of the conveyances in the chain of title from said Samuel L. Hawkins to the said L. S. Brown the said land described in paragraph 2 should be conveyed, and that in each of said instances the grantees intended to buy the said parcel of land."

Where a mistake occurs in a series of conveyances, the last vendee may have the deed corrected.—*Tillis v. Smith,* 108 Ala. 264, 19 South. 374; *Goulding Fertilizer Co. v. Blanchard,* 178 Ala. 298, 59 South. 485; *Jackson v. Lucas,* 157 Ala. 51, 47 South. 224, 131 Am. St. Rep. 17; 6 Pom. Eq. Jur. § 678.

The above authorities are to the effect that relief will be granted the last vendee, when the *same mutual mistake* has been repeated in each link of a chain of titles, and this was emphasized in the recent case of *Jackson*

*v. Lucas, supra.* By the Acts of 1911, p. 199, the Legislature has prescribed the following:

"That any person claiming title to land directly or remotely from the grantee in a deed, mortgage or other conveyance, containing an erroneous description shall be authorized and entitled to maintain a bill in a court of chancery or other court exercising equity jurisdiction, for the reformation of such deed, mortgage, or other conveyance, and shall be entitled to relief in all cases in which the grantee in the deed, or mortgage description would be entitled to relief.

"Sec. 2.   That in order to authorize a person claiming title under the grantee in a deed, mortgage or other conveyance containing an erroneous   description   to maintain a bill for the reformation of the same, it shall not be necessary that there shall be any error in description in all the conveyances constituting the chain of title from the grantor in the conveyance containing the erroneous description to the complainant; but if it shall reasonably appear that it was the purpose or intention of each grantor to convey the land which was intended to be conveyed in said deed, mortgage or other conveyance containing the erroneous description, the complainant shall be entitled to a reformation of such deed, mortgage or other conveyance."

Many of the assignments of demurrer attack the bill as amended, upon the grounds that the facts of each successive attempt to correctly convey the property are not fully set out; that it is not shown who are successive grantors and grantees in the alleged chain of title, nor in what manner the mistake between   each   said grantor and grantee was made; that the bill as amended does not state sufficient facts going to show that the same mutual mistake was made by and between each successive grantor and grantee in the chain of title.

It is apparent from the reading of section 2 of the above act of the Legislature that, to now maintain a bill of this character, it is no longer necessary that the *same mutual mistake* as to description shall have occurred in each successive deed in the chain of title; but it is provided that, if it shall reasonably appear that it was the purpose or intention of *each* grantor to convey the land which was intended to be conveyed in the conveyance containing the erroneous description, the complainant shall be entitled to' relief.

By section 1 of said act it was provided that relief should be had by one claiming title to land directly or remotely from the grantee in the conveyance containing the erroneous description, in all cases in which the grantee in the conveyance containing such erroneous description would himself be entitled to relief.

This act was approved April 15, 1911, and the original bill in this case was filed October 16, 1912. It is argued that this act can have no bearing on this case. In this view we cannot concur. In the case of *Goulding Fertilizer Co. v. Blanchard, supra,* this court held that said act was not applicable to pending suits, by reason of section 95 of our Constitution. Nothing stated in that opinion could be said to lead to an indication that the act would not apply to suits subsequently brought. Its purpose was to do away with the necessity of proof of *mutual mistake in each and every link* of the chain of title, in order to establish such privity of title on the part of the complainant as to authorize the suit. The rule that for such privity of title there must be shown the *same mutual mistake* in each link in the chain of title was a rule established by the courts, and its enforcement doubtless sometimes worked a hardship. The vendee is interested in perfecting his chain of title. His remedy, on a warranty in a deed, would often be of lit-

tle value, and the Legislature recognized the injustice that would result oftentimes by the application of this rule.—*Jackson v. Lucas, supra.* The effect of the statute is simply to abrogate the *court-made* rule, and establish in its stead a legislative-made rule. We are of the opinion that it was a matter within the scope and authority of the Legislature, and that the enactment violated no constitutional provision.—*Abbett v. Page,* 92 Ala. 571, 9 South. 322; *Brown v. Williams,* 87 Ala. 353, 6 South. 111.

We think it clear that this act is applicable to this case. This enactment was doubtless inspired by the decisions of this court above cited. Its clear intention was to give to a vendee, whether immediate or remote from the grantee of the first deed containing the erroneous description, the right to a reformation of such deed, to the same extent as was possessed by the original grantee, notwithstanding the fact that the error of description did not occur in all of the conveyances constituting the chain of title. It is only made necessary by the said act that it shall reasonably appear that it was the purpose or intention of each grantor to convey the land which was intended to be conveyed in the conveyance containing the erroneous description.

By this bill the complainant seeks the reformation of the deed to the original grantee, Brown. We are of the opinion that it was unnecessary to set out the name of each successive grantee in the chain of title; and that many of the assignments of demurrer point out what may be termed evidential matter, not necessary of averment in the bill. The bill shows that the complainant, by numerous and successive mesne conveyances, has become the owner of said real estate; that all of said successive conveyances have copied the mistake made in the deed from Hawkins to Brown; and that it was

mutually intended by the respective grantors and grantees that in each of the conveyances in the chain of title the said land described in paragraph 2 should be conveyed, and that in each of said instances the grantors intended to buy the said parcel of land. We think the averments of the bill sufficient in this respect, under the provisions of said act.

The next and most important question presented by the demurrer is that of *laches;* and it was for this reason, as stated by him, that the chancellor sustained the demurrer. It is settled by our decisions that a demurrer will lie for *laches,* as well as for statutory limitations.—*Fowler v. Alabama Iron & Steel Co.,* 164 Ala. 414, 51 South. 393. In the application of the doctrine, courts of equity act in accordance with the analogy furnished by the state of limitations. The rule is, of course, subject to modifications, to some of which reference will hereinafter be made.

"When suit is brought within the time fixed by the analogous statute, the burden is on defendant to show the existence of the circumstances amounting to *laches.* When the suit is brought after the statutory time, plaintiff must plead and prove that *laches* does not exist, and the facts must be specifically and precisely pleaded."— *Fowler v. Alabama Iron & Steel Co., supra.* The burden, therefore, under this rule, is upon the complainant to excuse the long delay, and to show that *laches* does not exist.

"No arbitrary rule exists for determining when a demand becomes stale, or what delay will be excused, and the question of *laches* is to be decided upon the particular circumstances of each case."—16 Cyc. 152.

"In the absence of substantial change of condition or prejudice to third parties, mere delay is not a bar."

"When a party has been in possession of land under a deed which failed to properly describe the premises,

*laches* will not be imputed until an opposing claim is set up."—34 Cyc. 967; 5 Pom. Eq. Jur. § 33.

Our own decisions recognize the principle that *laches* is not imputed to one in possession.—*Fowler v. Ala. Iron & Steel Co., supra; Harold v. Weaver*, 72 Ala. 373; *Ogletree v. Rainer*, 152 Ala. 472, 44 South. 565.

The complainant, recognizing the burden upon it of excusing itself of the long delay, has averred in the bill as amended that the error in said deed from said Hawkins to said Brown was not discovered until about the time respondent Nabers brought his ejectment suit.

It is further alleged that until recently the parcel of land described in pararaph 2 of the bill was unimproved, and that the several persons to whom conveyances had been made in the chain of title from L. S. Brown down to orator had such possession as said land was susceptible of; that no claim of title or of ownership hostile to complainant, or to any of the grantees in the chain of title had been made by any person until the time of the bringing of said ejectment suit; that the several owners of said parcel of land, during the terms of their ownership, paid the taxes thereon, claimed to own the same, and exercised such actual ownership as was necessary to care for said land; that during all the time since the conveyance of said Hawkins to said Brown the several persons through whom complainant claims title have claimed the identical land described in paragraph 2 of the bill, paid the taxes thereon, and exercised acts of ownership over same.

In the above case of *Fowler v. Alabama Iron & Steel Co.* the following language is found on page 418 of 164 Ala., on page 394 of 51 South., of the opinion: "Since the time when complainant—or its predecessors in interest, if that was the case—came into possession and had been so asserting its equitable title, it has not need-

[Woodlawn Realty & Development Co. v. Hawkins, et al.]

ed to invoke the affirmative relief of equity, except in response to the action of law now pending. During such time the doctrine of *laches* had no application to its situation; and doubtless for this purpose, if there were no actual possession, general acts of ownership would be sufficient.—*Ruckman v. Cory,* 129 U. S. 387, 9 Sup. Ct. 316, 32 L. Ed. 728; *Hayes v. Carroll,* 74 Minn. 134, 76 N. W. 1017; *Hall v. Peoria, etc., Ry. Co.,* 143 Ill. 163, 32 N. E. 598; *Harold v. Weaver,* 72 Ala. 373; 5 Pom. Eq. Jur. § 33."

The averments of the bill above pointed out show general acts of ownership over the property, the payment of taxes thereon, and such possession as the land was susceptible of. We think them sufficient, as against any assignment of demurrer herein interposed, for the purposes of this bill.—*Simmons Creek Coal Co. v. Doran,* 142 U. S. 417, 12 Sup. Ct. 239, 35 L. Ed. 1063.

In addition to the above allegations, the bill states that the respondents and those under whom they claim have not been injured by any delay in seeking a reformation of said deed; that they have not been caused to expend any sum of money or take any injurious position, and that no injury whatever has been done the said persons by reason of any delay.

On the other hand, it is alleged that none of the respondents nor any one from whom they derived title has interposed any claim to said land, or questioned the title of complainant and those from whom it derived title, until the bringing of said suit, but that they have seen complainant, and those from whom it derived title and possession, exercising acts of ownership over the same and making improvements thereon.

We conclude that the averments of the bill excuse the delay and therefore that the assignments of demurrer imputing *laches* to complainant were not well taken, and should have been overruled.

Assignments of demurrer, such as that "said bill as amended is multifarious," and that "the amendment to the prayer causes the bill as amended to create a departure," are of such general character as not to require consideration. They come under the condemnation of sections 3121 and 5340 of the Code.—*Central of Georgia Railway Co. v. Joseph,* 125 Ala. 313, 28 South. 35; *L. & N. R. R. Co. v. Cowley,* 164 Ala. 331, 50 South. 1015; *Ryall v. Allen,* 143 Ala. 222, 38 South. 851. Nor are they considered in brief of counsel for appellee.

We are of the opinion that the learned chancellor committed an error in sustaining the demurrers of respondents. His decree is therefore reversed, and one is here rendered overruling the demurrers of respondents; and allowing them 30 days to answer the bill as amended, and the cause is remanded.

Reversed, rendered, and remanded.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.